**Kelly J. MALISON, Plaintiff,**

v.

**PRUDENTIAL–BACHE SECURITIES, INC., Defendant.**

**No. C–C–86–459–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 12, 1987.

William J. Waggoner, Waggoner, Hamrick, Hasty, Monteith, Kratt, Cobb & McDonnell, Charlotte, N.C., for plaintiff.

David C. Wright, III, Robinson, Bradshaw & Hinson, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court upon Motion of Defendant Prudential-Bache Securities, Inc. ("Bache") to compel arbitration. The Court heard arguments of counsel on Friday, January 30, 1987, in Charlotte, North Carolina. Bache was represented by Attorneys John Wester and David Wright. Plaintiff Kelly J. Malison ("Malison") was represented by Attorney William Waggoner.

Bache seeks to compel arbitration of this action before the New York Stock Exchange pursuant to 9 U.S.C. § 4, and to stay the action pending such arbitration pursuant to 9 U.S.C. § 3.

Malison began working for Bache on July 18, 1983 as an account executive train-

ee. Bache paid Malison during his training period and incurred a substantial expense for that training. On September 16, 1983, Malison signed an Account Executive Trainee Agreement which provides that if Malison leaves Bache within one year of employment, he must reimburse Bache in the amount of $16,000 for its expense in training him.

On July 18, 1983, Malison signed and executed a Uniform Application for Securities Industry Registration ("U–4") with the New York and American Stock Exchanges. The U–4 was signed by the appropriate inspector on August 8, 1983 and stamped "received" on September 12, 1983. That application provides that the applicant agrees "to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organization with which I register."

After working 10 months with Bache, Malison left and began working for Paine-Webber. Bache commenced arbitration proceedings on May 8, 1986 with the New York Stock Exchange to recover the $16,000 agreed upon reimbursement fee. On the eve of the arbitration proceedings, Malison filed a complaint in state court seeking to have the agreements declared void and illegal. Malison obtained a temporary restraining order from the state court prohibiting Bache from proceeding with arbitration. Bache subsequently removed the action to this Court.

■ Federal policy highly favors arbitration as a viable, expedient and economic alternative to litigation and where a controversy arises over whether to arbitrate, doubt should be resolved in favor of arbitration. *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711 (7th Cir.1967).

■ If any party to the arbitration clause attempts to invalidate the clause, the Court must determine the validity of the provision. Once the district court determines that the making of an agreement to arbitrate is not in issue, it "shall make an order directing the parties to arbitration

in accordance with the agreement." 9 U.S.C. § 4. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967); *Conticommodity Services, Inc. v. Philipp & Lion*, 613 F.2d 1222 (2d Cir.1980) (before compelling arbitration court must be satisfied under § 4 that making of the arbitration agreement or refusal to comply therewith is not in dispute). It is not for the Court to consider the merits of the underlying controversy, but only whether the issue is one which the parties have agreed to arbitrate *Prima Paint Corp., supra,* 388 U.S. at 402, 87 S.Ct. at 1805.

Malison executed the U–4 registration application which contained the following provision:

> "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in question 8."

Rule 347 of the New York Stock Exchange and Article VIII § 1 of its Constitution both provide for arbitration of disputes between members of the Exchange at the instance of either party.

Rule 347 of the New York Stock Exchange provides:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure described elsewhere in these rules.

In addition, Article VIII § 1 of the New York Stock Exchange Constitution provides:

> Any controversy between parties who are members, allied members, member firms or member corporations ... arising out of the business of such member, allied member, member firm or member

corporation shall at the instance of any such party, be submitted for arbitration, in accordance with the provisions of the Constitution and the Rules of the Board of Directors.

■ Malison's contentions that the Federal Arbitration Act does not apply to this case are without merit. The Federal Arbitration Act applies to "a written [arbitration] provision in ... a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. It has been held that a "contract between a New York Stock Exchange brokerage firm and its employees is a contract involving commerce governed by the [federal] Arbitration Act." *Roodveldt v. Merrill Lynch, Pierce,* 585 F.Supp. 770, 779 (E.D.Pa.1984); see also, *Dickstein v. DuPont,* 443 F.2d 783 (1st Cir.1971).

The North Carolina Arbitration Act does not override the Federal Act as Malison suggests. The Federal Act overrides conflicting state law when any form of interstate commerce exists. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Malison relies on *Merrill Lynch, Pierce v. Ware,* 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973), in which the Court held that broker employees had the right to pursue their wage claims in the California State Court and were not required to submit to arbitration under the rules of the NYSE. That case, however, did not involve the Federal Arbitration Act and its relation to state laws.

Other cases which have dealt with the relation of the Federal Arbitration Act to state law hold that federal law controls. *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370, 376 (8th Cir. 1983) ("federal substantive law preempts state law governing the enforceability of arbitration agreements in interstate contracts."); *In re Mercury,* 656 F.2d 933 (4th Cir.), *aff'd.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Federal Arbitration Act preempts contrary state law provisions. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding unconstitutional a state law that prohibited the enforcement of arbitration agreements between a franchisee and franchisor). In *Bayma v. Smith, Barney, Harris, Upton & Co., Inc.,* 784 F.2d 1023 (9th Cir.1986), the Court rejected the argument that state law relating to the arbitrability of employment contracts displaced applicable federal law governing the arbitration agreement included in the New York Stock Exchange's standard registration contracts signed by a brokerage employee.

In *Burke County Public Schools Board of Education v. Shaver Partnership,* 303 N.C. 408, 279 S.E.2d 816 (1981), the North Carolina Supreme Court held that state courts must by virtue of the Supremacy Clause, U.S. Const. Art. VI, Clause 2, apply the Federal Arbitration Act to a contract evidencing a transaction involving commerce notwithstanding the contract contained a provision which called for application of North Carolina law.

■ Malison's contentions that he is excluded from the Act are likewise without merit. Although the statute provides that it shall not apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce, that exclusionary language is aimed at employees in transportation industries. *Miller Brewing Co. v. Local No. 9, AFL–CIO,* 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied,* 460 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); *Dickstein v. DuPont, supra,* (employment contract between account executive not actually engaged in actual movement of goods in interstate commerce not excluded).

The contention that the contract does not evidence a transaction involving interstate commerce is untenable in that it would be impossible for a broker to transact business with the New York Stock Exchange without being involved in interstate commerce. The assertion is also contrary to Malison's argument that he is a worker engaged in interstate commerce, and therefore, excluded from the Act.

■ Malison's contention that Bache did not bind itself to arbitration is without merit because the Constitution and Rules of the New York Stock Exchange create a binding agreement to arbitrate between an employee and his member firm. *Cullen v. Paine, Webber, Jackson & Curtis, Inc.,* 587 F.Supp. 1520, 1523 (N.D.Ga.1984); *Muh v. Newburger, Loeb & Co., Inc.,* 540 F.2d 970 (9th Cir.1976). The rules of the New York Stock Exchange bind both Bache and Malison, and give both the right to demand that the other arbitrate any dispute between them.

Further, there existed sufficient consideration for the arbitration agreement in that by virtue of his registration, Malison received the right to transact business on the New York Stock Exchange as Bache's registered representative.

■ The Court does not believe that the arbitration clause is a contract of adhesion. It is required by the New York Stock Exchange in order for Malison to trade; and Malison does not dispute that he signed the New York Stock Exchange registration application. Malison was over 30 years old and had a master's in business administration when he signed the agreement and application. The arbitration clause does not favor one party over another.

Malison's other claims of unconscionability, illegality, and duress are subject to arbitration; such claims are properly made before a panel of arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra,* 388 U.S. at 400, 87 S.Ct. at 1804; *Merrill-Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 637 F.2d 391, 398 (5th Cir. 1981).

For the above-stated reasons, the Court is of the opinion that the Motion of Bache should be GRANTED.

IT IS, THEREFORE, ORDERED that:

(1) the parties proceed with arbitration in accordance with the Rules of the New York Stock Exchange; and

(2) all proceedings in this action be *stayed* pending such arbitration.