Smith, J.
(dissenting in Fletcher v Kidder, Peabody & Co.). The majority opinion erroneously applies the holding in Gilmer v Interstate/Johnson Lane Corp. (500 US 20, 111 S Ct 1647) to claims of racial discrimination, ignores Alexander v Gardner-Denver Co. (415 US 36), unnecessarily overrules Matter of Wertheim & Co. v Halpert (48 NY2d 681) and on the basis of an inapplicable footnote in a Supreme Court opinion, abandons the statutory and constitutional mandate to resolve racial discriminatory disputes in a court of law and in accordance with the equal protection of the laws. Accordingly, I dissent.
*639 The issue before the Court is whether Federal substantive law permits the compulsory arbitration of claims of racial discrimination in employment in violation of State law. Plaintiff, an African-American male graduate of Harvard College, commenced this action, pursuant to the Human Rights Law, alleging constructive discharge from his employment as a result of racial discrimination. Plaintiff is a registered broker-dealer with the New York Stock Exchange, the National Association of Securities Dealers and the American Stock Exchange. From November 1989 until his resignation in March 1991, plaintiff was employed by defendant as a trader analyst. As a condition of his employment, plaintiff was required to execute the standard Uniform Application for Securities Industry Registration or Transfer, the so-called "U-4 Form”, which compels arbitration of any dispute between plaintiff (registered representative) and defendant (member) required by the exchanges to be arbitrated.
The complaint alleges that plaintiff resigned his position after a dispute over compensation. Specifically, it is contended that under the terms negotiated with a managing director of Kidder, Peabody, his annual compensation was to be no less that 20%, and no more than 25%, of his trading profits and that his 1990 bonus payment would be paid no later than early 1991. It is further alleged that plaintiff generated net profits of over $25.5 million in 1990, the largest in his department, entitling him to between $5 and $6.5 million in compensation. It is further alleged that defendant concluded that "the amount it was obligated to pay Mr. Fletcher was simply too much money to pay a young black man.” Thus, defendant allegedly reneged on the agreement by withholding 50% of his bonus compensation, deferring payment for up to 18 months, and requiring him to pay for trading losses on a dollar for dollar basis — all terms to which plaintiff’s white counterparts were not subjected. Plaintiff, in part, bases his contention that these breaches were racially motivated on a conversation he allegedly had with defendant’s head of human resources/equal employment opportunity officer wherein plaintiff was advised that he should not complain because he was "one of the highest paid black males” in the country. Subsequently, plaintiff resigned, submitted his contract dispute to arbitration and commenced this action.
Defendant moved to stay the action and compel arbitration of the racial discrimination claim pursuant to sections 2, 3 *640 and 4 of the Federal Arbitration Act (FAA) (9 USC § 1 et seq.) and CPLR 7503 (a). Supreme Court denied the motion, concluding that "[t]he simple act of accepting employment and agreeing to arbitration does not constitute a waiver of the right to seek redress in a judicial forum for alleged racial discrimination” and that "it would be against public policy to contract in advance for a limiting forum to hear such claims.”
The Appellate Division reversed, on the law, and granted the motion, thereby staying the action and directing plaintiff to proceed to arbitration (Fletchter v Kidder Peabody & Co., 184 AD2d 359). Essentially, the Appellate Division concluded that the motion court had misconstrued and misapplied United States Supreme Court cases it held to be controlling— specifically, Gilmer and Dean Witter Reynolds, Inc. v Alford (— US —, 111 S Ct 2050, on remand 939 F2d 229 [5th Cir 1991]). The Appellate Division construed Federal case law to pose no barrier to compulsory arbitration of statutory employment discrimination claims such as the case at bar (Fletcher v Kidder, Peabody & Co., 184 AD2d 359, 361-362). This Court granted leave to appeal.
Before this Court, plaintiff argues that Federal law favoring arbitration does not preempt New York law because the legislative history of the Civil Rights Act of 1991, i.e., the amendments to title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.), demonstrates the intent to preclude compulsory arbitration of race discrimination claims. This Federal legislation corresponds to the Human Rights Law and, pursuant to Federal law, that intent to preclude such compulsory arbitration is extended to analogous State claims. Plaintiff cites the House of Representatives Education and Labor Committee Report which mirrored the language of the Report of the House Judiciary Committee that its approval of alternative dispute resolution mechanisms was not intended "to preclude rights and remedies that would otherwise be available.”[1]
Plaintiff argues also that the waiver of the right to a judicial determination of a racial discrimination claim should *641 be permissible only after the claim has arisen. He contends further that the prospective waiver of this right is contrary to public policy because potential minority securities industry employees should not be required to anticipate that they will be subjected to discrimination and that such a claim would best be resolved by an industry-sponsored, industry-screened, and industry-selected tribunal.
Defendant contends that the execution of the arbitration agreement was voluntary and, therefore, binding and that Federal law establishes that compulsory arbitration of a claim of racial discrimination under these circumstances is permissible. Plaintiffs contentions are disputed by defendant and it is alleged that the arbitration procedures are fair and adequate.
In Gilmer, the Supreme Court held that a claim pursuant to the Age Discrimination in Employment Act (ADEA) (29 USC § 621 et seq.) could be subjected to compulsory arbitration (500 US, at —, 111 S Ct, at 1650). There the respondent Interstate/ Johnson Lane Corporation had hired Gilmer as a manager of financial services in May 1981. Gilmer, as a condition of employment, had to register as a securities representative with several stock exchanges. The registration application, the U-4 Form, committed all disputes between Gilmer and his employer to arbitration. Gilmer was terminated after six years, at age 62. Gilmer subsequently brought suit in United States District Court pursuant to the ADEA and he filed a claim with the Equal Employment Opportunity Commission (EEOC). The employer moved, without success, to compel arbitration, but the Fourth Circuit Court of Appeals reversed.
In upholding the compulsory arbitration of Gilmer’s claim, the Supreme Court reasoned (1) that compulsory arbitration of an age discrimination claim was not inconsistent with the underlying social policy of the ADEA (500 US, at —, 111 S Ct, at 1653); (2) that claimant remained free to file charges with the EEOC (id.); (3) that there was no evidence of congressional intent in the ADEA to preclude the waiver of the judicial forum (500 US, at —, 111 S Ct, at 1653-1654); (4) that the arbitration procedures were adequate (500 US, at —, 111 S Ct, at 1654-1655); and (5) that Alexander v Gardner-Denver Co. (415 US 36, supra) and its progeny were not controlling because they did not involve the compulsory arbitration of a statutory claim, the arbitration clauses at issue were in the context of collective-bargaining agreements, and the FAA was not applicable (500 US, at —, 111 S Ct, at 1656-1657). In *642 addition, without determining the scope of the exclusion in section 1 that the FAA did not apply to "contracts of employment * * * of workers engaged in foreign or interstate commerce”, the Supreme Court held in a footnote "that § l’s exclusionary clause does not apply to Gilmer’s arbitration agreement” because the U-4 Form was not a part of his employment contract (500 US, at —, n 2, 111 S Ct, at 1651-1652, n 2).
The dissenters, Justices Stevens and Marshall, questioned the majority’s failure to address the issue of whether the FAA was applicable to employment contracts and concluded that the majority had construed the section 1 exclusion too narrowly. The dissenters would read section 1 to exclude "any agreements by the employee to arbitrate disputes with the employer arising out of the employment relationship, particularly where such agreements to arbitrate are conditions of employment” (500 US, at —, 111 S Ct, at 1659). The dissenters also stated that compulsory arbitration conflicted with the legislative intent evidenced in the ADEA (500 US, at —, 111 S Ct, at 1660-1661).
As stated, in this case the majority opinion erroneously applies Gilmer to the facts here, without necessity or justification overrules the decision in Wertheim and, on the basis of an inapplicable footnote in a Supreme Court decision, abandons the statutory and constitutional mandate to resolve claims of racial discrimination in the courts and in accordance with the equal protection of the laws.
First and foremost, the majority misapplies Gilmer to the facts here. Gilmer is distinguishable from the case at bar. Gilmer is not a racial discrimination case and, in fact, does not mention racial discrimination. The Supreme Court has neither addressed the precise issue before us nor provided any indication that Gilmer would sanction the compulsory arbitration of racial discrimination claims.[2]
Footnote 2, which the majority contends excludes the U-4 agreement from being a part of any employment contract, does no such thing. It should be clear that the Supreme Court’s holding in Gilmer was simply that a claim under the ADEA could be subjected to compulsory arbitration pursuant *643 to an arbitration clause in a securities registration application (U-4) form. The holding in Gilmer is given in the first paragraph of the opinion. The Supreme Court stated:
"The question presented in this case is whether a claim under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621 et seq., can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application. The Court of Appeals held that it could, 895 F.2d 195 (CA4 1990), and we affirm” (500 US, at —, 111 S Ct, at 1650).
The holding does not say that a U-4 Form can never be a part of an employment contract. Moreover, it does not say that any arbitration clause in a U-4 Form can be used to compel arbitration of a racial discrimination claim.
The footnote in Gilmer should be interpreted for what it is, a determination that the U-4 agreement in Gilmer, as opposed to all cases, was not a part of an employment agreement. The Supreme Court did not hold there that such a U-4 agreement could never be a part of an employment contract. This view is confirmed, first, by the Supreme Court’s own reference to the fact that while several amici curiae had argued that section 1 "excludes from the coverage of the FAA all 'contracts of employment,’ ” Gilmer had not raised the issue in the lower courts or in his petition for certiorari.[3] It is confirmed, second, *644 by the Supreme Court’s statement that "we leave for another day the issue raised by amici curiae.” (500 US, at —, n 2, 111 S Ct, at 1651-1652, n 2.)
Second, the majority ignores Alexander v Gardner-Denver Co. (supra) and overrules Matter of Wertheim & Co. v Halpert (supra) without necessity or justification. In the absence of an unequivocal ruling from the Supreme Court on this issue, this Court should adhere to the principles articulated in Alexander and in Wertheim. In Alexander, the Supreme Court held that an employee’s statutory right to a trial de novo under title VII of the Civil Rights Act of 1964 was not precluded by the prior submission of his claim to arbitration in accordance with a collective-bargaining agreement (415 US, at 52). The Supreme Court distinguished contractual rights from statutory rights and found no impediment to utilization of different forums to enforce those distinctly separate rights even though violation of those rights was based upon the same facts (415 US, at 49-51). The Alexander Court considered the purpose of title VII— "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin” (415 US, at 44) —its statutory scheme of providing for consideration of employment discrimination claims in several forums (415 US, at 47), and its legislative history manifesting "a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes” (415 US, at 48). It also stated that, "we think it clear that there can be no prospective waiver of an employee’s rights under Title VII” (415 US, at 51). Also, with respect to the arbitrability of a title VII claim, the Alexander Court stated, "Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created *645 by Title VII [because among other things] * * * the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land * * * [and] the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts” (415 US, at 56-57).
In Wertheim this Court declined to require arbitration of plaintiff’s claim of sex discrimination against her employer, a member of the New York Stock Exchange. This Court stated:
"[1] Although arbitration is a favored method of dispute resolution, arbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced (Matter of Sprinzen [Nomberg], 46 NY2d 623; see, also, Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621). This is especially true in the area of discrimination where particular remedies are afforded by both State and Federal statutes (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 183-184).” (48 NY2d, at 683.)
Since Wertheim and even before, the policy of this State has been to resolve such claims of discrimination in the courts.
Third, it needs emphasis that equality of opportunity in employment in New York State is a civil right which is to be enforced by the courts. Article I, § 11 of the State Constitution reads as follows:
"No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.”
The Human Rights Law is "deemed an exercise of the police power of the state * * * in fulfillment of the provisions of the constitution of this state concerning civil rights” (Executive Law § 290 [2]). The Human Rights Law makes the opportunity to obtain employment a civil right (Executive Law § 291). That section reads as follows:
"The opportunity to obtain employment without *646 discrimination because of age, race, creed, color, national origin, sex or marital status is hereby recognized as and declared to be a civil right.” (§ 291 [1].)
That civil right is protected by the right of an aggrieved person to go into a court of law.
The Human Rights Law expressly grants persons claiming to be aggrieved by an unlawful discriminatory practice, such as discrimination in employment on the basis of race, the right to seek judicial enforcement of State antidiscrimination laws. Thus, Executive Law § 297 (9) reads:
"Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed” (emphasis supplied).
The legislative history of the 1991 amendment of title VII indicates that the congressional intent was to preclude the compulsory arbitration of racial discrimination claims. By addressing alternative dispute resolution methods and clarifying that they were not to preclude other available rights and remedies, Congress specifically articulated what was already implicit in the multiple forum scheme of title VII — that these rights and remedies were coextensive.[4] A passage from the Judiciary Committee Report supporting the amendments makes this clear. It reads:
"This section encourages the use of alternative means of dispute resolution, where appropriate and to the extent authorized by law. These methods include settlement negotiations, conciliation, facilitation, mediation, factfinding, mini-trials and arbitration.
*647 "This amendment was adopted to encourage alternative means of dispute resolution that are already authorized by law. A virtually identical amendment was enacted as part of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.
"The Committee emphasizes, however, that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the Committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII. This view is consistent with the Supreme Court’s interpretation of Title VII in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). The Committee does not intend for the inclusion of this section be [sic] used to preclude rights and remedies that would otherwise be available.”[5]
The majority’s decision sanctions the involuntary waiver of the statutory right to judicial review of a claim of racial discrimination. The waiver is involuntary because it is a condition of employment — failure to register precludes one from being a representative and registration requires agreement to arbitrate disputes with the employer. There is no negotiation of this term. Refusal means exclusion from the industry. Thus, this case arguably comes within the statement in Gilmer that " 'courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds’ ” for revoking a contract (500 US, at —, 111 S Ct, at 1656, quoting Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 627). The involuntariness of this waiver is highlighted by the fact that it is prospective. As noted above, the Alexander Court stated its objection to the prospective waiver of rights under title VII and that objection has yet to be rescinded. Also, the waiver was not knowing because the full panoply of rights now alleged to have been waived were in no way specified in the U-4 Form.
At the core of the instant controversy is racial discrimina *648 tion — a reality that continues to hinder the full realization of the principles upon which this country was founded. The Supreme Court stated in Gilmer, " '[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function’ ” (500 US, at —, 111 S Ct, at 1653, quoting Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 637, supra). Although all forms of discrimination are reprehensible, as this statement recognizes, the remedies needed to eradicate one form of unlawful discrimination may be different from those needed to eliminate another form. This Court and any court should hesitate before forcing victims of discrimination into one single remedy, chosen by those who allegedly discriminated against them. The historical reality of racial discrimination as opposed to age discrimination would seem to compel a different treatment. Claims of racial discrimination have been a large part of litigation for over a century. Age discrimination claims have not. In the face of this history and without any evidence of the experience of courts dealing with the issues at the trial level, I cannot agree that these long-standing grievances can be arbitrated away.
Accordingly, the order of the Appellate Division should be reversed.
In Fletcher v Kidder, Peabody & Co.: Order affirmed, with costs.
Chief Judge Kaye and Judges Simons, Hancock, Jr., and Bellacosa concur with Judge Titone; Judge Smith dissents and votes to reverse in another opinion.
In Reid v Goldman, Sachs & Co.: Order affirmed, with costs.
Chief Judge Kaye and Judges Simons, Hancock, Jr., and Bellacosa concur; Judge Smith taking no part.

. HR Report No. 102-40 (I), 102d Cong, 1st Sess, at 97 (1991) and HR Report No. 102-40 (II), 102d Cong, 1st Sess, at 41 (1991) and the interpretive memorandum of the cosponsor of the 1991 amendments (Interpretive Mem on Civil Rights Act of 1991, 137 Cong Rec H9530 [daily ed, Nov. 7, 1991] are authoritative statements of the legislative intent. Plaintiff argues further that State constitutional, statutory and decisional law preclude the arbitration of the dispute here.

. The Supreme Court’s remand of Dean Witter Reynolds, Inc. v Alford (— US —, 111 S Ct 2050) "for further consideration in light of Gilmer” does not alter this fact. The Supreme Court specifically did not direct the court to decide the case as Gilmer was decided.

. The entire footnote 2 reads as follows: "Section 1 of the FAA provides that nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.’ 9 U.S.C. § 1. Several amici curiae in support of Gilmer argue that that section excludes from the coverage of the FAA all 'contracts of employment.’ Gilmer, however, did not raise the issue in the courts below, it was not addressed there, and it was not among the questions presented in the petition for certiorari. In any event, it would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained in a contract of employment. The FAA requires that the arbitration clause being enforced be in writing. See 9 U.S.C. §§ 2, 3. The record before us does not show, and the parties do not contend, that Gilmer’s employment agreement with Interstate contained a written arbitration clause. Rather, the arbitration clause at issue is in Gilmer’s securities registration application, which is a contract with the securities exchanges, not with Interstate. The lower courts addressing the issue uniformly have concluded that the exclusionary clause in § 1 of the FAA is inapplicable to arbitration clauses contained in such registration applications. See, e.g., Dickstein v. DuPont, 443 F.2d 783 (CA1 1971); Malison v. Prudential-Bache Securities, Inc., 654 F. Supp. 101, 104 (WDNC 1987); *644 Legg, Mason & Co. v. Mackall & Coe, Inc., 351 F. Supp. 1367 (DC 1972); Tonetti v. Shirley, 219 Cal.Rptr. 616, 618, 173 Cal.App.3d 1144 (1985); See also Stokes v. Merrill Lynch, Pierce, Fenner & Smith, 523 F.2d 433, 436 (CA6 1975). We implicitly assumed as much in Perry v. Thomas, 482 U.S. 483 (1987), where we held that the FAA required a former employee of a securities firm to arbitrate his statutory wage claim against his former employer, pursuant to an arbitration clause in his registration application. Unlike the dissent, see post, at 1659-1660, we choose to follow the plain language of the FAA and the weight of authority, and we therefore hold that § l’s exclusionary clause does not apply to Gilmer’s arbitration agreement. Consequently, we leave for another day the issue raised by amici curiae. ” (500 US, at —, n 2, 111 S Ct, at 1651-1652, n 2.)

. Under title VII, employment discrimination claims may be considered in several forums (see, 42 USC § 2000e-5 [b] [EEOC]; 42 USC § 2000e-5 [c] [State and local agencies]; 42 USC § 2000e-5 [f] [Federal courts]).

. HR Report No. 102-40 (II), at 41, op. cit.