**Mary Isabell CHERRY, Plaintiff,**

v.

**WERTHEIM SCHRODER AND COMPANY, INC. and Robert Parlanti, Defendants.**

Civ. A. No. 9:93–2947–22.

United States District Court, D. South Carolina, Beaufort Division.

May 26, 1994.

Colden Rhind Battey, Beaufort, SC, for plaintiff.

Alice Fountain Paylor, Charleston, SC, Ralph C. Dawson, Glen P. Banks, New York City, Charles B. Macloskie, Beaufort, SC, for defendants.

## AMENDED ORDER

CURRIE, District Judge.

The opinion of this court filed May 16, 1994 is withdrawn in full and the following opinion is substituted:

This is a sexual harassment case alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and pendent state law claims based on S.C.Code Ann. § 1–13–80(a)(1) (Law.Co-op.1976) and intentional infliction of emotional distress. The matter is presently before the court on Defendants' Motion to Dismiss/Alternative Motion to Stay Action Pending Arbitration. The court has carefully considered the record in this matter and heard oral argument on April 21, 1994. For the reasons cited below, the court denies Defendants' Motion to Dismiss but grants Defendants' Alternative Motion to Stay Action Pending Arbitration.

## FACTS

Defendant Wertheim Schroder and Company, Inc., (hereinafter "WS") is a registered broker-dealer and investment banking firm. It maintains an office in Hilton Head, South Carolina, in which Defendant Parlanti is the supervisor. On June 22, 1992, Plaintiff be-

came a sales assistant in WS's Hilton Head office, performing primarily clerical duties. On June 29, 1992, Plaintiff executed an employment agreement (Baard Affidavit, Exhibit D), which stated that in consideration of her employment by WS, she agreed that:

> Any controversies or claims arising out of, or relating to this agreement, shall be determined exclusively by arbitration under offices and rules of the New York Stock Exchange, Inc., if available or, the American Arbitration Association, if not, and the decision of the arbitrator or arbitrators shall be final and binding on all parties.

*Id.* at ¶ D. Eventually Plaintiff wished to become a registered sales assistant so she could perform additional duties and increase her knowledge of securities transactions. Accordingly, on October 5, 1992, Plaintiff applied for registration by completing a "Form U–4" application (Baard Affidavit, Exhibit A).

Paragraph 2 of the U–4 application executed by Plaintiff contained the following provision:

> I apply for registration with the jurisdiction and organizations indicated in item 10 as may be amended from time to time and in consideration of the jurisdictions and organizations receiving and considering my application, I submit to the authority of the jurisdictions and organizations and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by laws and rules and regulations of the jurisdictions and organizations as they are or may be adopted, or amended from time to time.

In item 10 of the U–4 application, Plaintiff indicated she wished to be registered with the National Association of Securities Dealers (NASD).[1] (Baard Affidavit, Exhibit A).

Paragraph 5 of the U–4 application contained an arbitration provision, which provided as follows:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitution, or by laws of the organization indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Plaintiff did not succeed in passing an examination administered by the NASD and left employment with Defendant WS shortly thereafter.

Plaintiff instituted this action in the Court of Common Pleas for Beaufort County on October 21, 1993. Defendants removed the action to this court on November 5, 1993. On November 12, 1993, Defendants moved pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* to compel arbitration of Plaintiff's claims based on the employment agreement and security application executed by Plaintiff. Plaintiff contends that because the parties had vastly unequal bargaining power, the employment agreement and U–4 application were contracts of adhesion that should not be enforced by the court.

## DISCUSSION

■ Written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). "By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.,* 470 U.S. at 218, 105 S.Ct. at 1241. A district court's duty to enforce an arbitration agreement is not diminished when a party to such an agreement asserts a statutory claim. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111

---

1. Plaintiff also indicated on the U–4 application that she wished to register with other exchanges such as the ASE, CBOE, and NYSE. Because the court's decision is based solely on a consideration of the NASD rules, the court does not address whether the rules and regulations of the other exchanges would have compelled arbitration in the instant case.

S.Ct. 1647, 114 L.Ed.2d 26 (1991) (Age Discrimination in Employment Act (ADEA) claim).

The threshold question is whether, as Plaintiff urges, 9 U.S.C. § 1 proscribes enforcement of the various arbitration clauses in this case. The Federal Arbitration Act, 9 U.S.C. § 1 provides, in part, that "Nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Plaintiff contends that she is a worker in interstate commerce [2] and that therefore, the Federal Arbitration Act may not apply to her employment. Thus, plaintiff asserts that neither the June 29 employment agreement nor the U–4 form provide a basis for compelling arbitration.

■ The United States Supreme Court has established a two-step inquiry in considering whether to enforce an arbitration agreement. "The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). "The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). Courts are to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration with a healthy regard for the federal policy favoring arbitration, *Dean Witter Reynolds, Inc.,* 470 U.S. at 218, 105 S.Ct. at 1241. The Federal Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. *Id.*

## A. Arbitrability of June 29 Employment Agreement

■ In determining whether the parties agreed to arbitrate this dispute, this court has examined the language of the June 29 employment agreement. The agreement contains a broad arbitration provision ("any controversies or claims arising out of, or relating to this agreement"), which clearly put Plaintiff on notice that such claims would be subject to arbitration. Although under the Federal Arbitration Act courts have license to construe the scope of arbitration agreements liberally, no such liberal or far-reaching interpretation need be resorted to here because the language is clear on its face. Accordingly, the court finds that under the June 29 agreement the parties agreed to arbitrate the claims in this suit.

■ The second inquiry in determining arbitrability is to ascertain whether the claims at issue are within any category of claims or contracts as to which agreements to arbitrate are held unenforceable. *Mitsubishi,* 473 U.S. at 627, 105 S.Ct. at 3354. Since the United States Supreme Court's decision in *Gilmer,* courts, relying on an absence of legislative intent to preclude arbitration of Title VII claims, have uniformly found the claims arbitrable. *See Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161 (5th Cir.1992). Accordingly, this court concludes that Plaintiff's claims under Title VII are not the sort of claim exempted from the mandate of the Federal Arbitration Act.

■■ Similarly, the court rejects Plaintiff's argument that her type of employment was exempted from arbitration by the exclusion contained in 9 U.S.C. § 1 ("Nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."). The exclusion set forth in § 1 applies only to those employees who are actually engaged in the

---

**2.** For purposes of addressing this argument, the court accepts as true Plaintiff's assertion that she

is engaged in interstate commerce.

transportation industry, *see Hull v. NCR Corp.*, 826 F.Supp. 303 (E.D.Mo.1993) (workers must actually be engaged in movements of interstate or foreign commerce). Because it is apparent that Plaintiff's duties with Defendant WS did not involve transportation, the prohibition of § 1 is inapplicable to this case. Accordingly, because no bar exists to the application of the Federal Arbitration Act to Plaintiff's June 29 employment agreement, the court concludes Plaintiff must arbitrate her Title VII claims based on that agreement.

### B. Arbitrability of U–4 Application

■ As to the arbitrability of Plaintiff's claim based on having executed a U–4 application, the NASD has adopted a code of arbitration procedure pursuant to its by-laws (Baard Affidavit ¶¶ 6–7). Section 1 of the NASD Code in effect at the time of Plaintiff's employment compelled "the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association ... (2) between or among members and public customers, or others." NASD Code, Section 1, adopted effective November 1, 1968; amended effective February 13, 1992. Similarly, disputes between associated persons arising out of a business of a member are to be arbitrated. (Baard Affidavit, Exhibit C). A "member" is defined as "any broker or dealer admitted to membership" in the NASD (Baard Affidavit, Exhibit B). Defendant WS is a broker/dealer admitted to membership in the NASD. (*Id.*). Because Plaintiff was engaged in the securities business under the control of Defendant WS, the court concludes she was an "other" person as that term is broadly used in Section 1 of the governing NASD Code. In addition, Defendant Parlanti may also be considered an "other" as that term is used.

The two arbitration provisions contained in Plaintiff's U–4 application, paragraph 2 and paragraph 5, provide a clear basis for compelling arbitration in this case because Plaintiff agreed to be bound by the NASD Code of Arbitration Procedure.

The court's interpretation of the U–4 application in this case is consistent with the United States Supreme Court's decision in

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), *affirming*, 895 F.2d 195 (4th Cir. 1990). In *Gilmer*, Plaintiff executed a securities registration application which included the same language at issue in this case. The clause in *Gilmer* provided "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register ..." 895 F.2d at 196 n. 1. When Plaintiff brought an age discrimination claim, the Fourth Circuit held that in light of the above arbitration clause, the Federal Arbitration Act required Plaintiff's claim to be arbitrated. The Supreme Court affirmed this ruling. 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26.

■ *Gilmer* is controlling in the instant case. The only real question is whether Plaintiff's failure to pass the NASD examination alters this conclusion. The NASD application contained a provision stating that "in consideration of the jurisdictions and organizations receiving and considering my application, I submit to the authority of the jurisdictions and organizations and agree to comply with all provisions" of the "organizations" (Baard Affidavit, Exhibit A). Thus, express language of the application put Plaintiff on notice that she was agreeing to be subject to the organizations' rules and regulations by the mere execution of the application form.

Other courts, relying on the express language of the U–4 application, have held that a person was obligated to arbitrate irrespective of the success or failure in taking the exam. *See Foley v. Presbyterian Ministers Fund*, 1992 WL 63269, 1992 U.S.Dist. Lexis 3572 (E.D.Pa.); *Chisolm v. Kidder, Peabody Asset Management, Inc.*, 810 F.Supp. 479 (S.D.N.Y.1992) ("When Plaintiff filled out and signed a uniform application ... Plaintiff became subject to NYSE rules ..."). Accordingly, the court concludes that the mandate of *Gilmer* applies to a case in which the plaintiff was not successful in her application.

As discussed above, the court has concluded that the Federal Arbitration Act exclusion in 9 U.S.C. § 1 for employment contracts

applies only to transportation workers' claims, and thus the clear language in the U–4 application that "any controversies or claims arising out of, or relating to this agreement, shall be determined exclusively by arbitration ..." similarly compels arbitration based on the U–4 application.

■ Plaintiff contends, however, that the U–4 application was a contract of adhesion that this court should decline to enforce. This argument has been rejected in several U–4 cases. *See Barrowclough v. Kidder, Peabody and Company, Inc.*, 752 F.2d 923 (3d Cir.1985); *Malison v. Prudential–Bache Securities, Inc.*, 654 F.Supp. 101 (W.D.N.C. 1987). Plaintiff has advanced no facts supporting a claim that she was fraudulently induced to sign the U–4 application. Nor does she contend she was coerced to sign it. The general principle is that arbitration provisions shall be enforced "where there has been no fraud in the inducement," *O'Neel v. National Association of Securities Dealers, Inc.*, 667 F.2d 804 (9th Cir.1982). In the absence of any allegation of fraud, coercion, or unfairness, the court rejects Plaintiff's contention that the arbitration provision should be stricken as arising from a contract of adhesion.

■ Having concluded that arbitration of Plaintiff's claims is compelled based on the June 29 employment agreement and the U–4 application, the court must consider whether Plaintiff's claim should be dismissed or stayed. At oral argument counsel for Defendants stated that they have no objection to this court's staying the present action, pursuant to § 3 of the Federal Arbitration Act. Under a stay, if the arbitration proceedings are somehow legally deficient, Plaintiff may return to federal court for review. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26. The court concludes that a stay is more appropriate under the circumstances of this case. Accordingly, the claims against Defendants WS and Robert Parlanti will be stayed pending arbitration of this matter.

IT IS ORDERED THAT THE PREVIOUS OPINION OF THIS COURT FILED MAY 16, 1994 BE WITHDRAWN AND THE ABOVE OPINION SUBSTITUTED.