MEMORANDUM
 

 DAVIS, District Judge.
 

 This action involves a dispute between a former vendor of asbestos products and one of its liability insurers, and raises interesting questions as to the interplay among federal arbitration policy, pre-emption principles, choice-of-law doctrine and rules of contract interpretation. Pending before the Court is defendant’s motion to compel arbitration. No hearing is necessary. For the reasons set forth below, I shall compel arbitration of the dispute and dismiss this case without prejudice.
 

 (i)
 

 None of the facts material to the underlying procedural and jurisdictional issues are in dispute, and the facts are readily gleaned from the parties’ pleadings. Plaintiff is a Maryland corporation formerly in the business of installing and selling asbestos products. For several years, plaintiff has been a defendant in many of the thousands of mass tort claims arising out of the discovery that asbestos is a lethal substance. Defendant is a Pennsylvania corporation and a successor to one of plaintiffs liability carriers.
 

 In 1987, plaintiff became a signatory to a certain agreement entitled “Agreement Concerning Asbestos Related Claims” or, as the parties have referred to it, the ‘Wellington Agreement.” As described by plaintiff,
 

 The Wellington Agreement was created by insurers for the benefit of insurers providing coverage for asbestos claims. The primary purpose of the Agreement was to provide a facility for the administration of asbestos claims and to allow the carriers to deal with the numerous insurance coverage disputes between and among insurers as well as insureds in light of the differing court decisions in this area, as well as to simplify the procedures for handling claims, reduce the costs of such procedures to the insurers and to apply insurance arrangements in a consistent manner to achieve reasonable processing costs and to resolve and discontinue the various disputes and lawsuits concerning insurance coverage____
 

 Thus, the Wellington Agreement “established the Asbestos Claims Facility to arrange for the evaluation, settlement, payment or defense of all asbestos related claims against” signatories to the Agreement, at substantial cost savings.
 

 After 1987, pursuant to the terms of the Wellington Agreement, defendant made certain expenditures associated with damage claims asserted by workers and others against plaintiff (so-called “gap payments”),
 
 *426
 
 which expenditures arguably should have been paid by one or more other insurance carriers which had issued policies to plaintiff, but which were not signatories to the Wellington Agreement. Under the Wellington Agreement, plaintiff had a duty to pursue claims against such non-signatory carriers and to reimburse a signatory-carrier, like defendant here, for the latter’s “gap payments” made on behalf of their insureds. Under the Agreement, as an inducement to the prompt and diligent pursuit of claims against non-signatory carriers for reimbursement of “gap payments,” interest (at a designated rate) on “gap payments” would not begin to accrue until two years after each such payment by a carrier, and periodic payments of interest were due quarterly. In the instant case, defendant asserts that plaintiff owes more than a quarter million dollars in principal and accrued interest on “gap payments” defendant made on plaintiff’s behalf between 1987 and 1995. Plaintiff takes a radically different view of the matter, contending that,
 
 inter alia,
 
 it owes no interest under the Agreement.
 

 When the parties were not able to resolve this dispute, defendant instituted binding arbitration in May 1996, in accordance with the terms of the Wellington Agreement. Plaintiff promptly instituted the instant action in the Circuit Court for Baltimore City by filing a “Petition to Stay Arbitration” pursuant to state law. The gist of the Petition to Stay is that a three-year limitations period applies to defendant’s claims, and that therefore, any claim for interest accruing before May 1993 is barred. Relying upon Maryland caselaw interpreting the state’s version of the Uniform Arbitration Act, Md.Ann.Code, Cts. & Jud.Proc.Art., § 3-201
 
 et seq.
 
 (1995 Repl. Vol., 1974), plaintiff contends that the issue of limitations/laehes is a justiciable and not an arbitrable issue.
 
 See Town of Chesapeake Beach v. Pessoa Constr. Co., Inc.,
 
 330 Md. 744, 625 A.2d 1014, 1016 (1993). Defendant timely removed the action to this Court, and has sought a stay of these proceedings and an order compelling arbitration, arguing that federal law and not state law applies.
 

 GO
 

 The principal issue in this ease is whether Maryland or federal law applies to the arbitration clause contained in the Wellington Agreement. The arbitration clause provides: “[Signatory Insureds and Insurers] shall resolve through alternative dispute resolution ... any disputed issues within the scope of the Agreement____” The Agreement also contains a choice-of-law provision, which states as follows in relevant part: “All disputes concerning the validity, interpretation and application of the Agreement ... and all disputes concerning issues within the scope of the Agreement shall be determined in accordance with the applicable common law of the states of the United States.” The parties differ widely in their respective interpretations of these provisions.
 

 Plaintiff argues strenuously that Maryland arbitration law applies. This result is achieved as follows. The choice-of-law clause is properly understood as selecting the law of the state with the most significant interest in, or connection to, the particular dispute at issue or the particular parties involved in the dispute. In this ease, that state is Maryland. Maryland commits to a judicial rather than an arbitral forum the question whether limitations or laches bars arbitration of a dispute. Moreover, according to plaintiff, since the weighty federal interest in the enforcement of agreements to arbitrate clearly does not extend to those instances where there has not been an agreement to arbitrate, federal law is inapplicable to this dispute.
 

 Plaintiff also contends that, even if federal law applies, the scope of the arbitration clause contained in the Wellington Agreement is not sufficiently broad to require arbitration of the limitations/laehes issue.
 

 Defendant answers that the Wellington Agreement is clearly a contract within the scope of the Federal Arbitration Act, which should be applied in this case. Defendant asserts that plaintiff’s construction of the choice-of-law provision is “nonsense.” Although defendant was a participant in the drafting of the Wellington Agreement, it does not attempt to define the phrase “common law of the states of the United States” as it might be applied to the question of
 
 *427
 
 arbitrability, but it simply suggests that the interpretation of the phrase, like everything else in the Agreement, is for the arbitrators. Defendant argues that unless the signatories to the Wellington Agreement specifically intended that the arbitration procedures of a particular state were to apply to a particular dispute, then federal law applies, under which it is clear that the issue of limitations or laches is reserved for determination by arbitrators and not a district court. Defendant contends that an intent to apply Maryland arbitration procedures, to the exclusion of federal law, cannot justifiably be inferred from the circumstances of this ease or from the language employed in the Wellington Agreement.
 

 Defendant also contends that the arbitration clause of the Wellington Agreement is a “broad” one which easily encompasses the issue of limitationsAaehes.
 

 (hi)
 

 I have fully considered the parties’ contentions and I am constrained to the view that the combination of the respect due the important policies embodied in the Federal Arbitration Act and a legitimate judicial skepticism for the strained (even if plausible) coupling of the choice-of-law and arbitration provisions relied on so heavily here by plaintiff militates in favor of the application of federal law to the dispute between the parties.
 

 The Federal Arbitration Act, 9 U.S.C. § 1
 
 et seq.,
 
 enunciates a strong “federal policy favoring arbitration,”
 
 Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring courts to “rigorously enforce agreements to arbitrate.”
 
 Dean Witter Reynolds, Inc. v. Byrd,
 
 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). The FAA provides that written agreements to arbitrate “shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.” 9 U.S.C. § 2. The FAA also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, 9 U.S.C. § 3; and the FAA authorizes a federal district court to issue an order compelling arbitration if there has been a failure to comply with the arbitration agreement, 9 U.S.C. § 4.
 

 Consequently, “the Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,
 
 whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.” Moses H. Cone Hosp.,
 
 460 U.S. at 24-25, 103 S.Ct. at 941 (emphasis added). It “leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.”
 
 Dean Witter Reynolds, Inc.,
 
 470 U.S. at 218, 105 S.Ct. at 1241;
 
 see also Shearson/American Express, Inc. v. McMahon,
 
 482 U.S. 220, 225-27, 107 S.Ct. 2332, 2336-38, 96 L.Ed.2d 185 (1987);
 
 Gilmer v. Interstate/Johnson Lane Corp.,
 
 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991),
 
 affg
 
 895 F.2d 195 (4th Cir.1990).
 

 Plaintiff does not suggest that the FAA does not apply to the Wellington Agreement; clearly, the Agreement is a contract in interstate commerce. Nor does Plaintiff contend that .under the FAA, in contrast to Maryland’s arbitration procedures, the issue of limitations or laches is to be determined by a judicial decision-maker rather than by the arbitrators. Instead, plaintiff necessarily relies upon the contention that the choice-of-law provision in the Wellington Agreement achieves what a choice-of-law provision achieved in
 
 Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,
 
 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In
 
 Volt,
 
 the Court held that it would not reexamine a state court’s conclusion that the parties had elected (by the terms of a choice-of-law provision) state rather than federal arbitration procedures, in the course of holding that under such circumstances, the FAA did not pre-empt state arbitration statutes. 489 U.S. at 474-80, 109 S.Ct. at 1253-56.
 
 See Mastrobuono v. Shearson Lehman Hutton,
 
 — U.S. -, -, -& n. 4, 115 S.Ct. 1212, 1216, 1218 & n. 4, 131 L.Ed.2d 76 (1995).
 

 
 *428
 

 Volt
 
 is of no assistance to plaintiff here. I agree with defendant that a clearer statement than is found here must be required of an intent to prohibit a federal court’s resort to the FAA under the circumstances of this case. Defendant has not attempted to define the phrase “the common law of the states of the United States” and perhaps wisely so; it is a daunting task, indeed.
 
 Cf. In the Matter of Rhone-Poulenc Rorer, Inc.,
 
 51 F.3d 1293, 1301 (7th Cir.1995) (“ ‘The common law is not a brooding omnipresence in the sky, but the articulate voice of some sovereign or quasi sovereign that can be identified.’ ... The voices of the quasi-sovereigns that are the states of the United States sing negligence with a different pitch.”) (citation omitted). But as Justice Brennan argued in dissent in
 
 Volt,
 
 choice-of-law clauses have rarely been employed to express an intention to resort to state rather than federal law, as contrasted with an intention to resort to one state’s law over another state’s law.
 
 See
 
 489 U.S. at 488-92, 109 S.Ct. at 1261-62 (Brennan, J., dissenting). The choice-of-law clause here does not even accomplish that limited purpose with any measurable clarity, and is thus one step removed even from the simple provision — “law of the place where the project is located” — at issue in
 
 Volt.
 
 See 489 U.S. at 469-71, 109 S.Ct. at 1251. “[T]he applicable common law of the states of the United States” would be a peculiar way indeed to say “do not apply the Federal Arbitration Act” to the obviously anticipated, likely application of well-known, long-standing legal principles of federal arbitration jurisprudence to a major private interstate “compact” such as the Wellington Agreement.
 
 Mastrobuono
 
 significantly limits the potential scope of Volt’s arguable diminished regard for federal arbitration policy.
 
 See
 
 — U.S. at-, n. 4, 115 S.Ct. at 1217, n. 4. As in
 
 Mastrobuono,
 
 at most, the choice-of-law provision here “introduces an ambiguity.”
 
 Id.
 
 at -, 115 S.Ct. at 1218. Notably, Chief Justice Rehnquist, the author of
 
 Volt,
 
 fully joined Justice Stevens’s opinion for the Court in
 
 Mastrobuono;
 
 the Chief Justice clearly rejected Justice Thomas’s assertions that
 
 Mastrobuono
 
 was indistinguishable from
 
 Volt. See id.
 
 at---, 115 S.Ct. at 1219-23 (Thomas, J., dissenting). Accordingly, I reject the plaintiffs construction and application of the choice-of-law provision in the Wellington Agreement; I conclude, for the reasons stated, that the FAA applies to ■the Wellington Agreement.
 

 Plaintiff argues, in the alternative, that even if the FAA is deemed applicable, the arbitration clause is so narrow (applying to “disputed issues within the scope of the Agreement”) that it cannot reasonably be interpreted to encompass the issue of limitations or laches. According to plaintiff, this defense to defendant’s arbitral claims arises “by operation of [Maryland] law” and not “within the scope of’ the Wellington Agreement. I reject this argument as largely a reformulation of the first issue. Whether the Agreement should be interpreted to allow defendant’s interest claim is an issue “within the scope of the Agreement.” In other words, an issue of timeliness is necessarily encompassed by the whole of a comprehensive, integrated undertaking such as the Wellington Agreement. Contrary to plaintiffs contention, it is not necessary that an issue be
 
 mentioned
 
 within the four comers of a contract for that issue to arise “within the scope of’ the rights and duties created by the contract.
 

 In any event, even if plaintiffs construction of the arbitration provision is facially defensible, the Fourth Circuit has made clear that a court “may not deny a party’s request to arbitrate an issue ‘unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.’ ”
 
 American Recovery Corp. v. Computerized Thermal Imaging, Inc.,
 
 96 F.3d 88, 92 (4th Cir. 1996) (quoting
 
 United Steelworkers of America v. Warrior & Gulf Navigation Co.,
 
 363 U.S. 574, 582-583, 80 S.Ct. 1347, 1352-1353, 4 L.Ed.2d 1409 (I960)) (emphasis supplied). In this case, it cannot be said “with positive assurance” that the limitations or laches defense is beyond the scope of the arbitration clause contained in the Wellington Agreement. Accordingly, arbitration may not be avoided.
 

 
 *429
 
 (iv)
 

 For reasons not expressly stated in the record, defendants have sought a stay but not outright dismissal of this case. Nevertheless, federal district courts are vested with the inherent power to control and protect the administration of court proceedings.
 
 White v. Raymark Indus., Inc.,
 
 783 F.2d 1175, 1177 (4th Cir.1986). “Under the inherent power, a court may issue orders ... and dismiss actions.”
 
 United States v. Shaffer Equipment Co.,
 
 11 F.3d 450, 461 (4th Cir. 1993). The authority to dismiss a party’s case sua sponte is “an inherent power governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.”
 
 Link v. Wabash R.R. Co.,
 
 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962).
 

 Other courts have recognized the propriety of a dismissal rather than a stay pending arbitration under appropriate circumstances.
 
 See Arnold v. Arnold Corp.,
 
 920 F.2d 1269, 1275-1276 (6th Cir.1990);
 
 Cherry v. Wertheim Schroder & Co., Inc.,
 
 868 F.Supp. 830, 836 (D.S.C.1994). There is no apparent reason why complete relief will not be available to plaintiff in the arbitration proceedings ordered herein. Accordingly, I shall dismiss this case without prejudice.
 

 (v)
 

 For the reasons stated herein, I conclude that plaintiff has failed to demonstrate that the parties elected in the Wellington Agreement to have Maryland arbitration procedures control the incidents of the comprehensive scheme for alternative dispute resolution created in that Agreement. Nor has plaintiff provided me with evidence or argument justifying the conclusion “with positive assurance” that the arbitration clause does not encompass the dispute in this case. Accordingly, an order compelling arbitration is entered herewith.