■ ALPHONSE FLETCHER, JR., Respondent, v KIDDER, PEABODY & COMPANY, INC., Appellant.—Order, Supreme Court, New York County (Myriam J. Altman, J.), entered November

27, 1991, denying defendant's motion pursuant to sections 2, 3 and 4 of the Federal Arbitration Act (9 USC) and CPLR 7503 (a) to stay this action and to compel plaintiff to arbitrate his claim of racial discrimination against it, reversed, on the law, the motion granted, this action stayed and plaintiff is directed to proceed to arbitrate his claim, without costs.

In accepting employment in defendant's equity trading department, plaintiff, who is black, executed the standard Uniform Application for Securities Industry Registration or Transfer, commonly referred to as a "U-4 Form" in which he agreed to arbitrate any dispute between him and his employer that the exchanges with which he is registered require to be arbitrated. On March 18, 1991, plaintiff resigned his employment and, thereafter, commenced this action, alleging that he was constructively discharged as the result of defendant's racial discrimination against him in violation of the New York State Human Rights Law (Executive Law § 296 [1] [a]).

The IAS court recognized that, although based upon an alleged violation of State law, plaintiff's claim is governed by the Federal Arbitration Act, which reflects the liberal Federal policy favoring arbitration, and is encompassed in the broad arbitration agreement, which does not exclude statutory claims *(see, Gilmer v Interstate/Johnson Lane Corp.,* 500 US —, 111 S Ct 1647; *Dean Witter Reynolds v Alford,* — US —, 111 S Ct 2050, *on remand* 939 F2d 229). However, despite its recognition that plaintiff's claim is based upon an alleged violation of the Human Rights Law, the court found that, unlike *Gilmer (supra)* and *Alford (supra)* which involved claims of age and sex discrimination respectively, racial discrimination resulting from State action is prohibited by the United States Constitution and, that plaintiff's agreement to arbitrate did not constitute a knowing and voluntary waiver of his right to seek redress in a judicial forum for alleged racial discrimination.

While the court's condemnation of racial discrimination is commendable, its conclusion was erroneous in two respects: its inference that the racial discrimination alleged here resulted from State action; and, its conclusion that unlike other forms of discrimination, it would be against public policy and "immoral" to enforce agreements to arbitrate employment disputes involving claims of racial discrimination.

Regarding the first issue, it is clear that this litigation does not involve or assert a violation of any constitutional right resulting from State action. Rather, the alleged discrimination

is purely a statutory claim arising under this State's Human Rights Law. As the court correctly noted, "[i]f a statutory claim is otherwise covered by an arbitration agreement, it is suitable for arbitration 'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue' (Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, 473 US 614, 628)." However, neither the court nor plaintiff has identified any such Congressional intent to preclude arbitration of plaintiff's racial discrimination claim.

Indeed, the Supreme Court, in *Gilmer (supra)* put to rest any argument that its prior decisions, in *Alexander v Gardner-Denver Co.* (415 US 36) and its progeny, precluded arbitration of statutory employment discrimination claims. Notably, the *Gilmer* court never distinguished *Alexander* on the basis that it involved a sex discrimination claim pursuant to Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e—2000e-17) and not an age discrimination claim under the Age Discrimination in Employment Act of 1967 (29 USC § 626). Thus, as stated by the Fifth Circuit on remand in *Alford v Dean Witter Reynolds* (939 F2d, *supra,* at 230), "Any broad public policy arguments against such a conclusion [that sex discrimination claims can be subjected to compulsory arbitration] were necessarily rejected by *Gilmer."*

Likewise, in providing a special exception for racial discrimination, the IAS court implied that other forms of discrimination are less detestable. However, such an inference lacks any foundation and, as recognized by plaintiff, any statement that racial discrimination claims implicate constitutional concerns while sex discrimination claims do not is erroneous as a matter of law since, although the 14th Amendment was adopted to redress this country's history of racial discrimination, it has long since been construed to prohibit sex discrimination as well.

Although enforcement of the Federal Arbitration Act is largely left to the State courts, it creates a body of Federal substantive law which is not dependent upon the forum chosen to assert the right to arbitration.

Moreover, although a State court is not ordinarily precluded from exercising its own judgment nor bound to follow the decisions of the Federal Circuit Court of Appeals encompassing its jurisdiction, it is bound to apply the statute as interpreted by the Supreme Court or in accordance with the rule established by lower Federal courts, if they are in agreement

*(Flanagan v Prudential-Bache Sec.,* 67 NY2d 500, 505-506, *cert denied* 479 US 931).

Thus, notwithstanding plaintiff's contention that there is a "profound tension" or "disarray" between *Gilmer (supra)* and *Alexander (supra)* and that the state of the law is in flux, Federal law since *Gilmer* is completely uniform *(see, e.g., Alford v Dean Witter Reynolds, supra; Willis v Dean Witter Reynolds,* 948 F2d 305; *Roe v Kidder Peabody & Co.,* 52 Fair Empl Prac Cas [BNA] 1865, US Dist Ct, SD NY, Apr. 19, 1990, Haight, J.) and *Flanagan (supra)* simply does not apply. The United States Supreme Court's decisions in *Gilmer* and post-*Gilmer* case law are controlling and arbitration of plaintiff's racial discrimination claim should have been compelled. Concur—Milonas, J. P., Kupferman, Ross and Rubin, JJ.

Asch, J., concurs in a memorandum as follows: I concur in the result and the reasoning of the memorandum for the list. I write here simply to point out that plaintiff has requested $25 million in punitive damages because of alleged racial discrimination by his former employer. Such a claim, if upheld by the arbitrator, would certainly warrant a substantial award to deter future similar conduct. However, pursuant to the present posture of the law of arbitration in New York, an award for punitive damages would be against the public policy of this State *(see, Matter of Dreyfus Serv. Corp. [Kent],* 183 AD2d 446, 447 [Asch, J., concurring]).