81 N.Y.2d 623 (1993)
619 N.E.2d 998
601 N.Y.S.2d 686
Alphonse Fletcher, Jr., Appellant,
v.
Kidder, Peabody & Company, Inc., Respondent.
Rita Reid, Appellant,
v.
Goldman, Sachs & Co. et al., Respondents.
Court of Appeals of the State of New York.
Argued May 5, 1993.
Decided July 9, 1993.
Chadbourne & Parke, New York City (Stanley S. Arkin, Robert J. Hausen, James T. Wicks and Foster J. Gibbons of counsel), for appellant in the first above-entitled action.
Epstein Becker & Green, P. C., New York City (Ronald M. Green of counsel), and Thomas A. Dubbs, New York City, for respondent in the first above-entitled action.
Douglas S. McDowell and Robert E. Williams, of the District of Columbia Bar, admitted pro hac vice, for the Equal Employment Advisory Council, amicus curiae, in the first above-entitled action.
Brown & Wood, New York City (A. Robert Pietrzak and Michele L. McNichol of counsel), for Securities Industry Association, Inc., amicus curiae, in the first above-entitled action.
Shiff & Tisman, New York City (Stephen E. Tisman and Laurence Shiff of counsel), for appellant in the second above-entitled action.
Sullivan & Cromwell, New York City (Theodore O. Rogers, Jr., and Tariq Mundiya of counsel), for respondents in the second above-entitled action.
Vladeck, Waldman, Elias & Engelhard, P. C., New York City (Laura S. Schnell and Ellen A. Harnick of counsel), for the National Employment Lawyers Association/New York, amicus curiae, in the second above-entitled action.
Chief Judge KAYE and Judges SIMONS, HANCOCK, JR., and BELLACOSA concur with Judge TITONE; Judge SMITH dissents and votes to reverse in another opinion.
Chief Judge KAYE and Judges SIMONS, HANCOCK, JR., and BELLACOSA concur; Judge SMITH taking no part.
*629 TITONE, J.
In Matter of Wertheim & Co. v Halpert (48 N.Y.2d 681), this Court held that because of the strong public policies embodied in Federal, State and local antidiscrimination laws, anticipatory agreements to arbitrate are unenforceable in the context of disputes involving claims of unlawful discrimination. The issue before us on these appeals is whether subsequent case law has rendered that holding obsolete in cases where the enforceability of the arbitration clause is governed by the Federal Arbitration Act (the FAA) (9 USC § 1 et seq.). We hold that, in light of recent Supreme Court decisions, most notably the Court's decision in Gilmer v Interstate/Johnson Lane Corp. (500 US 20, 111 S Ct 1647), our 1979 decision in Wertheim should no longer be followed in cases governed by the FAA. Instead, the arbitrability of statutory discrimination claims is henceforth to be determined by reference to Congress' intent with regard to alternative dispute resolution of that class of claims.
Fletcher v Kidder, Peabody & Co.
Plaintiff, an African-American formerly employed in defendant's equity trading department, commenced this judicial action under the State Human Rights Law, alleging that he had been the victim of racial discrimination in employment in violation of Executive Law § 296 (1) (a). In response, defendant moved to stay the action and compel arbitration on the basis of the broad arbitration clause contained in the Uniform Application for Securities Industry Registration or Transfer (the U-4 Form) that plaintiff had signed as part of his application for registration with the various securities exchanges.[1] The motion was predicated on defendant's contention that the FAA, which preempts State law, is applicable and that that Federal statute mandates enforcement of plaintiff's promise to submit "controvers[ies] * * * arising out of [his] employment" to arbitration.
The IAS Court denied the motion, reasoning that "it would *630 be against public policy to contract in advance for a [waiver of the right to obtain judicial redress of alleged racial discrimination]." The Appellate Division, however, reversed and granted the requested relief after concluding that the FAA and the cases decided under that statute mandated enforcement of plaintiff's arbitration agreement (184 AD2d 359).
Reid v Goldman, Sachs & Co.
Initially hired as a research assistant, plaintiff subsequently became a registered securities representative for defendant investment firm. As part of her registration application filed with the New York Stock Exchange, plaintiff was required to execute a U-4 Form containing a broad agreement to submit disputes arising out of her employment to arbitration. Some 13 years later, plaintiff was terminated from her position as a vice-president within defendant's firm.
Following her termination, plaintiff commenced the present action, alleging that she had been the victim of gender-based discrimination in violation of the State Human Rights Law (Executive Law § 290 et seq.). In response, defendant invoked the arbitration clause in the U-4 Form plaintiff had signed, contending that the dispute fell within the clause's terms and that the FAA mandated the clause's enforcement.
The IAS Court held in defendant's favor, concluding that plaintiff was obliged to arbitrate the discrimination claim. On plaintiff's appeal, the Appellate Division affirmed. Relying on Gilmer v Interstate/Johnson Lane Corp. (supra), the Court reasoned that plaintiff could be "compelled to arbitrate a State-based sex discrimination claim under the [FAA]" (188 AD2d 350).

I.
We begin with the premise, which is now well embedded in our case law, that the enforceability of the arbitration clause contained in these plaintiffs' U-4 Form applications is governed by the FAA (see, Singer v Jefferies & Co., 78 N.Y.2d 76, 81; Flanagan v Prudential-Bache Sec., 67 N.Y.2d 500). A further basic principle that is essential to our analysis is the corollary tenet that, in situations where the FAA is applicable, it preempts State law on the subject of the enforceability of arbitration clauses (Southland Corp. v Keating, 465 US 1; see, Singer v Jefferies & Co., supra, at 81). Indeed, the provisions of the FAA are controlling even though the dispute itself *631 may arise under State law (see, Southland Corp. v Keating, supra). Thus, regardless of what our own State's policies or case law might dictate in other circumstances, we are bound by the policies embodied in the Federal statute and the accompanying case law, and our prior State law holdings remain independently operative only to the extent that they have not been preempted by Federal law and policy.
In Matter of Wertheim & Co. v Halpert (supra), this Court held that an arbitration clause contained in a U-4 Form similar to those signed by plaintiffs was unenforceable in a dispute concerning a claim of discriminatory conduct in employment. At that time, the Court reasoned that important public policies are implicated in this area "where particular remedies are afforded by both State and Federal statutes" and, further, that allowing the employer to force the employee into arbitration "risks chilling the exercise of the statutory right" (id., at 683). The FAA and the impact of Federal law were not discussed, although the Court did make passing reference to Alexander v Gardner-Denver Co. (415 US 36), an employment discrimination case involving an arbitration clause that was not governed by the FAA.
The legal developments in the 13 years since Wertheim was decided necessitate a reexamination of that precedent. Although the United States Supreme Court has not squarely and directly addressed the enforceability of anticipatory arbitration clauses for disputes involving statutory prohibitions against racial and gender discrimination, it has considered the same issue in the context of a statutory age discrimination dispute and, in the process, has established a clear analytical framework for use in all cases in which an FAA-governed arbitration contract is invoked to force a nonjudicial resolution of a claim arising from statute (Gilmer v Interstate/Johnson Lane Corp., 500 US 20, 111 S Ct 1647, supra).
Contrary to the dissent's urgings, we cannot cling to the 13-year-old holding in Wertheim in the face of this recent definitive Supreme Court ruling solely because the nature of the statutorily prohibited discrimination alleged in Gilmer differs from the types of statutorily prohibited discrimination challenged in these two cases (see, Dean Witter Reynolds, Inc. v Alford, ___ US ___, 111 S Ct 2050, on remand 939 F.2d 229 [remanding for reconsideration of arbitrability of title VII gender discrimination claim in light of Gilmer v Interstate/Johnson Lane Corp., supra]). While adherence to State precedent *632 may be justified in the absence of clear guidance from the Supreme Court (see, Herzog Bros. Trucking v State Tax Commn., 72 N.Y.2d 720), we are bound to follow both the holding and the rationale of the Nation's highest Court on this and other questions of Federal law when, as here, there is no ambiguity in the Court's position (see, Flanagan v Prudential-Bache Sec., supra, at 505-506).[2] Indeed, any argument about the continued vitality of Wertheim is, necessarily, a "red herring," since, as the dissent itself acknowledges, even the plaintiff in Fletcher would utilize the methodology mandated in Gilmer v Interstate/Johnson Lane Corp. (supra) to establish his right to be relieved of the obligations imposed by his agreement to arbitrate (dissenting opn, at 640).[3]
Under that methodology, the party seeking to avoid enforcement of an arbitration clause governed by the FAA must demonstrate a congressional intent "to preclude a waiver of a judicial forum" for disputes based on a particular statutory right (Gilmer v Interstate/Johnson Lane Corp., 500 US, at ___, 111 S Ct, at 1652, supra; see also, Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, supra; Singer v Jefferies & Co., 78 N.Y.2d 76, supra; cf., Alexander v Gardner-Denver Co., 415 US 36, supra [involving arbitration agreement that was not subject to the FAA]). Where the right is predicated on a State or local statute rather than on a congressional enactment, it is undisputed by these parties that the courts are obliged to draw an analogy to the equivalent Federal law, where possible, and to consider Congress' intentions with regard to the rights created by that law.[4]
*633 The closest Federal analog to Executive Law § 296 (1) (a), under which these plaintiffs' claims arise, is title VII of the Civil Rights Act (42 USC § 2000e et seq.). Contrary to the Fletcher plaintiff's contentions, there is nothing in the legislative history of either that Federal statute itself or the recently adopted amendments to that statute (Pub L 102-166, 105 US Stat 1071 [the Civil Rights Act of 1991]) that would suggest the existence of a congressional intent to override the general rule that anticipatory contracts to arbitrate are enforceable under the FAA.
The amendment that the dissent cites, which authorizes the use of alternative dispute resolution methods for controversies arising under title VII (Pub L 102-166, tit I, § 118, 105 US Stat 1081), merely adds to the existing, statutorily created right to seek relief in judicial and administrative forums (see, 42 USC § 2000e-5 [b], [c], [f]). That amendment does not shed any light on Congress' intentions with regard to anticipatory agreements to use arbitral forums in the event of a future dispute. It is true that the amendment's cosponsor, Congressman Edwards, stated in the Congressional Record that the amendment was "intended to be consistent with decisions such as Alexander v Gardner-Denver Co. [supra], which protect employees from being required to agree in advance to arbitrate disputes" and that "[n]o approval whatsoever is intended of the Supreme Court's recent decision in [Gilmer] v. Interstate Johnson Lane Corp. [supra] * * * or any application or extension of it" (137 Cong Rec H9530 [daily ed, Nov. 7, 1991]). However, this statement cannot be viewed as indicative of the intentions of Congress as a whole, since it expresses only the position of the individual legislator who made it.
Similarly, the Reports of the House Education and Labor *634 Committee (HR Report No. 102-40 [I], 102d Cong, 1st Sess 97, reprinted in 1991 US Code Cong & Admin News 549, 635) and the House Judiciary Committee (HR Report No. 102-40 [II], 102d Cong, 1st Sess 41, reprinted in 1991 US Code Cong & Admin News 694, 735), on which the plaintiff in Fletcher relies, are not useful indicators of congressional intent with regard to the enforceability of arbitration contracts in title VII disputes. While those reports have more persuasive value than do Representative Edwards' personal remarks in terms of their ability to reflect Congress' intent, they are not particularly helpful to plaintiffs' positions here, because they merely set forth the committees' understanding of the enforceability of arbitration agreements in discrimination disputes under the then-existing Supreme Court precedent. Indeed, the section of the committee report on which the dissent relies states only that the committee "believes that any agreement to submit disputed issues to arbitration * * * does not preclude the affected person from seeking relief under the enforcement provisions of Title VII[, a] view [which] is consistent with the Supreme Court's interpretation of Title VII in Alexander v. Gardner-Denver Co. [supra]" (HR Report No. 102-40 [I], op. cit., at 97, reprinted in 1991 US Code Cong & Admin News 635 [emphasis added]). This section, of course, says nothing about what Congress actually intended.
It is true that the legislative history of title VII and its recent amendments does not demonstrate that Congress affirmatively intended to authorize anticipatory agreements to arbitrate claims arising from the statute's provisions. However, the Gilmer formula makes such a showing unnecessary. The FAA itself evidences a broad congressional intention to enforce agreements to arbitrate in accordance with their terms. Thus, under Gilmer, the burden is on the party seeking to avoid arbitration of a statutory claim to show that Congress specifically intended to preclude waivers of the right to judicial remedy for such claims. Here, the cited legislative history does not satisfy that burden. Consequently, in the absence of clear and unambiguous proof of legislative intent to the contrary, we are obliged to hold that these cases are governed by the presumption of arbitrability that is established by the FAA.

II.
Since there is no evidence that Congress intended to limit *635 the enforceability of FAA-governed arbitration agreements in the context of this class of disputes, the courts below were correct in concluding that plaintiffs' State Human Rights Law claims should be submitted to arbitration under the terms of the U-4 Forms they signed. To the extent that our decision in Matter of Wertheim & Co. v Halpert (48 N.Y.2d 681, supra) suggests the contrary, it has been superseded by subsequent Supreme Court precedent and is not to be followed.
In response to the dissent's argument that the waiver of judicial review implicit in plaintiff's U-4 Form should not be enforced because it was "involuntary" (dissenting opn, at 647), we note only that the argument cannot be maintained in light of Gilmer v Interstate/Johnson Lane Corp. (supra), as well as Singer v Jefferies & Co. (supra) and Flanagan v Prudential-Bache Sec. (supra). In each of those cases, the arbitration agreement contained in the U-4 Form was enforced even though the agreement had been signed as a condition to becoming a registered representative and a refusal to sign would have meant "exclusion from the industry" (dissenting opn, at 647). Indeed, the dissent cannot seriously suggest that the various financial exchanges cannot enforce the thousands of U-4 Forms that have been signed by would-be registrants, since such a conclusion would destabilize long-standing practices in this highly regulated industry and would wreak havoc with the regulatory system.
Similarly, the concerns about the adequacy of the arbitral forum that plaintiffs and the dissent raise have already been considered, and presumably balanced, by the Congress that enacted the FAA and thereby expressed its own preference for enforcing the parties' arbitration agreements. To the extent that the Supreme Court expressed a degree of mistrust for the arbitral process in Alexander v Gardner-Denver Co. (supra, at 57-58), that sentiment has clearly been supplanted by the more current view that arbitration is an important and respected method of resolving private disputes (see, Gilmer v Interstate/Johnson Lane Corp., 500 US, at ___, n 5, 111 S Ct, at 1656, n 5, supra; see also, Shearson/Am. Express v McMahon, 482 US 220, 231-232). Indeed, as the Supreme Court noted in Rodriguez de Quijas v Shearson/Am. Express (490 US 477, 481), concerns about arbitration "as a method of weakening the protections afforded in the substantive law to would-be complainants" are "far out of step with [the] current strong endorsement [by the Federal courts] of the * * * statutes favoring this method of resolving disputes." While the submission *636 of a dispute to arbitration inevitably does involve the loss of some procedural rights, a party who agrees to arbitration "trades th[ose] procedures and [the] opportunity for review * * * for the simplicity, informality, and expedition of arbitration" (Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 628). The value that expeditious resolution may have to a person deprived of his or her statutory rights is an element that the dissent's discussion of the weakness of the arbitral forum completely overlooks.
Finally, we stress that there is no disagreement among the members of this Court about the general proposition that racial, gender, and all other forms of invidious discrimination, are ugly realities that cannot be countenanced and that should be redressable through the widest possible range of remedies (see, dissenting opn, at 647-648). However, the issue before us is not whether discrimination is a social evil that should be eradicated with whatever tools we have. Rather, the issue is whether, under existing precedent, the important public policies underlying title VII of the Federal Civil Rights Act may be deemed to override the "`emphatic' national policy favoring arbitration" (Singer v Jefferies & Co., supra, at 81, citing Moses H. Cone Hosp. v Mercury Constr. Corp., 460 US 1, 24-25), as reflected in the FAA. The Supreme Court has already ruled, in the context of an age-discrimination suit arising under the Age Discrimination in Employment Act (29 USC § 621 et seq.), that the proper question is not whether the courts can discern a sound reason in public policy to refuse enforcement of FAA-governed arbitration contracts, but rather whether Congress, in creating a statutory remedy, intended that arbitration of the statutorily established claim would be foreclosed (Gilmer v Interstate/Johnson Lane Corp., supra). The dissent has offered no principled reason to apply either a different analysis or a different remedy in cases in which the statutorily based claim involves discrimination on the basis of the claimant's race rather than the claimant's age, gender, religion or national origin.

III.
Having concluded that there is nothing in the language or history of the relevant Federal statutes to indicate a congressional intent to foreclose arbitration of race- and gender-discrimination claims, we turn now to the sole argument raised by the plaintiff in Reid: whether the arbitration clause in the *637 U-4 Form that she and many others in financial services industry have signed is an agreement governed by the FAA. The gist of the Reid plaintiff's argument is that the U-4 Form is, in essence, a contract of employment and that it is therefore within the exclusionary provisions of section 1 of the FAA (9 USC § 1). That section provides that the terms of the FAA, including its provisions for enforcement of arbitration agreements, do not "apply to contracts of employment of seamen, railroad employees, or any other class of workers."
The Federal courts have debated the scope of this statutory exclusion. A majority of the lower Federal courts that have considered the issue have held that the exclusion is not limited to employment contracts of seamen, railroad employees and other classes of workers within the transportation industries, but rather extends to employment contracts in all industries (e.g., Willis v Dean Witter Reynolds, Inc., 948 F.2d 305; Occidental Chem. Corp. v International Chem. Workers Union, 853 F.2d 1310). Although the issue was raised and briefed by several of the amicus curiae in Gilmer v Interstate/Johnson Lane Corp. (500 US, at ___, n 2, 111 S Ct, at 1651-1652, n 2, supra), the Supreme Court declined to resolve it there. Indeed, the Gilmer Court concluded that resolving the question was unnecessary because the arbitration agreement before it, the plaintiff's U-4 Form application, was "a contract with the securities exchanges, not with [the plaintiff's employer]" and, thus, was not a "contract of employment" at all (id., 500 US, at ___, n 2, 111 S Ct, at 1651-1652, n 2).
In view of this clear holding, the Reid plaintiff's present contention that the U-4 Form she signed was a "contract of employment" within the meaning of the section 1 exclusion cannot be maintained. Contrary to plaintiff's assertions on this appeal, the Supreme Court's unambiguous statement rejecting the proposition she now advances cannot fairly be characterized as mere dictum, since that statement was essential to the Court's ultimate holding. And, contrary to the dissent's suggestion that the Gilmer holding "does not say that a U-4 Form can never be a part of an employment contract" (dissenting opn, at 643), the statement of the Gilmer Court on this issue was clear and unequivocal and was obviously intended to establish a principle of law that would extend to all cases involving U-4 Forms executed as part of an individual's application for registration with a regulated exchange. Accordingly, any attempt to bring the standard U-4 Form application within the exclusion provided in section 1 of the FAA is *638 foreclosed by the Gilmer Court's definitive rejection of that position.[5]
In sum, the arbitration agreement contained in the U-4 Form application that these plaintiffs signed is within the class of agreements that are governed by the FAA. Further, under the language of that statute as well as the recent decisional law construing it, that arbitration agreement is fully enforceable in disputes that fall within its terms, even where the underlying claim concerns an alleged breach of a local, State or Federal law barring racial or gender discrimination. While those categories of disputes undoubtedly implicate important public policies and, as such, demand heightened sensitivity in decision-making, there is no reason to assume that such sensitive decision-making cannot be had in the arbitral forum. Even more importantly, there is nothing in the present body of Federal law that supports carving out a special "public policy" exception from the general rule of arbitrability mandated by the FAA.
Accordingly, the orders of the Appellate Division in Fletcher v Kidder, Peabody & Co. and Reid v Goldman, Sachs & Co. should be affirmed, with costs.
SMITH, J. (dissenting in Fletcher v Kidder, Peabody & Co.).
The majority opinion erroneously applies the holding in Gilmer v Interstate/Johnson Lane Corp. (500 US 20, 111 S Ct 1647) to claims of racial discrimination, ignores Alexander v Gardner-Denver Co. (415 US 36), unnecessarily overrules Matter of Wertheim & Co. v Halpert (48 N.Y.2d 681) and on the basis of an inapplicable footnote in a Supreme Court opinion, abandons the statutory and constitutional mandate to resolve racial discriminatory disputes in a court of law and in accordance with the equal protection of the laws. Accordingly, I dissent.
*639 The issue before the Court is whether Federal substantive law permits the compulsory arbitration of claims of racial discrimination in employment in violation of State law. Plaintiff, an African-American male graduate of Harvard College, commenced this action, pursuant to the Human Rights Law, alleging constructive discharge from his employment as a result of racial discrimination. Plaintiff is a registered broker-dealer with the New York Stock Exchange, the National Association of Securities Dealers and the American Stock Exchange. From November 1989 until his resignation in March 1991, plaintiff was employed by defendant as a trader analyst. As a condition of his employment, plaintiff was required to execute the standard Uniform Application for Securities Industry Registration or Transfer, the so-called "U-4 Form", which compels arbitration of any dispute between plaintiff (registered representative) and defendant (member) required by the exchanges to be arbitrated.
The complaint alleges that plaintiff resigned his position after a dispute over compensation. Specifically, it is contended that under the terms negotiated with a managing director of Kidder, Peabody, his annual compensation was to be no less that 20%, and no more than 25%, of his trading profits and that his 1990 bonus payment would be paid no later than early 1991. It is further alleged that plaintiff generated net profits of over $25.5 million in 1990, the largest in his department, entitling him to between $5 and $6.5 million in compensation. It is further alleged that defendant concluded that "the amount it was obligated to pay Mr. Fletcher was simply too much money to pay a young black man." Thus, defendant allegedly reneged on the agreement by withholding 50% of his bonus compensation, deferring payment for up to 18 months, and requiring him to pay for trading losses on a dollar for dollar basis  all terms to which plaintiff's white counterparts were not subjected. Plaintiff, in part, bases his contention that these breaches were racially motivated on a conversation he allegedly had with defendant's head of human resources/equal employment opportunity officer wherein plaintiff was advised that he should not complain because he was "one of the highest paid black males" in the country. Subsequently, plaintiff resigned, submitted his contract dispute to arbitration and commenced this action.
Defendant moved to stay the action and compel arbitration of the racial discrimination claim pursuant to sections 2, 3 *640 and 4 of the Federal Arbitration Act (FAA) (9 USC § 1 et seq.) and CPLR 7503 (a). Supreme Court denied the motion, concluding that "[t]he simple act of accepting employment and agreeing to arbitration does not constitute a waiver of the right to seek redress in a judicial forum for alleged racial discrimination" and that "it would be against public policy to contract in advance for a limiting forum to hear such claims."
The Appellate Division reversed, on the law, and granted the motion, thereby staying the action and directing plaintiff to proceed to arbitration (Fletchter v Kidder, Peabody & Co., 184 AD2d 359). Essentially, the Appellate Division concluded that the motion court had misconstrued and misapplied United States Supreme Court cases it held to be controlling  specifically, Gilmer and Dean Witter Reynolds, Inc. v Alford (___ US ___, 111 S Ct 2050, on remand 939 F.2d 229 [5th Cir 1991]). The Appellate Division construed Federal case law to pose no barrier to compulsory arbitration of statutory employment discrimination claims such as the case at bar (Fletcher v Kidder, Peabody & Co., 184 AD2d 359, 361-362). This Court granted leave to appeal.
Before this Court, plaintiff argues that Federal law favoring arbitration does not preempt New York law because the legislative history of the Civil Rights Act of 1991, i.e., the amendments to title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.), demonstrates the intent to preclude compulsory arbitration of race discrimination claims. This Federal legislation corresponds to the Human Rights Law and, pursuant to Federal law, that intent to preclude such compulsory arbitration is extended to analogous State claims. Plaintiff cites the House of Representatives Education and Labor Committee Report which mirrored the language of the Report of the House Judiciary Committee that its approval of alternative dispute resolution mechanisms was not intended "to preclude rights and remedies that would otherwise be available."[1]
Plaintiff argues also that the waiver of the right to a judicial determination of a racial discrimination claim should *641 be permissible only after the claim has arisen. He contends further that the prospective waiver of this right is contrary to public policy because potential minority securities industry employees should not be required to anticipate that they will be subjected to discrimination and that such a claim would best be resolved by an industry-sponsored, industry-screened, and industry-selected tribunal.
Defendant contends that the execution of the arbitration agreement was voluntary and, therefore, binding and that Federal law establishes that compulsory arbitration of a claim of racial discrimination under these circumstances is permissible. Plaintiff's contentions are disputed by defendant and it is alleged that the arbitration procedures are fair and adequate.
In Gilmer, the Supreme Court held that a claim pursuant to the Age Discrimination in Employment Act (ADEA) (29 USC § 621 et seq.) could be subjected to compulsory arbitration (500 US, at ___, 111 S Ct, at 1650). There the respondent Interstate/Johnson Lane Corporation had hired Gilmer as a manager of financial services in May 1981. Gilmer, as a condition of employment, had to register as a securities representative with several stock exchanges. The registration application, the U-4 Form, committed all disputes between Gilmer and his employer to arbitration. Gilmer was terminated after six years, at age 62. Gilmer subsequently brought suit in United States District Court pursuant to the ADEA and he filed a claim with the Equal Employment Opportunity Commission (EEOC). The employer moved, without success, to compel arbitration, but the Fourth Circuit Court of Appeals reversed.
In upholding the compulsory arbitration of Gilmer's claim, the Supreme Court reasoned (1) that compulsory arbitration of an age discrimination claim was not inconsistent with the underlying social policy of the ADEA (500 US, at ___, 111 S Ct, at 1653); (2) that claimant remained free to file charges with the EEOC (id.); (3) that there was no evidence of congressional intent in the ADEA to preclude the waiver of the judicial forum (500 US, at ___, 111 S Ct, at 1653-1654); (4) that the arbitration procedures were adequate (500 US, at ___, 111 S Ct, at 1654-1655); and (5) that Alexander v Gardner-Denver Co. (415 US 36, supra) and its progeny were not controlling because they did not involve the compulsory arbitration of a statutory claim, the arbitration clauses at issue were in the context of collective-bargaining agreements, and the FAA was not applicable (500 US, at ___, 111 S Ct, at 1656-1657). In *642 addition, without determining the scope of the exclusion in section 1 that the FAA did not apply to "contracts of employment * * * of workers engaged in foreign or interstate commerce", the Supreme Court held in a footnote "that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement" because the U-4 Form was not a part of his employment contract (500 US, at ___, n 2, 111 S Ct, at 1651-1652, n 2).
The dissenters, Justices Stevens and Marshall, questioned the majority's failure to address the issue of whether the FAA was applicable to employment contracts and concluded that the majority had construed the section 1 exclusion too narrowly. The dissenters would read section 1 to exclude "any agreements by the employee to arbitrate disputes with the employer arising out of the employment relationship, particularly where such agreements to arbitrate are conditions of employment" (500 US, at ___, 111 S Ct, at 1659). The dissenters also stated that compulsory arbitration conflicted with the legislative intent evidenced in the ADEA (500 US, at ___, 111 S Ct, at 1660-1661).
As stated, in this case the majority opinion erroneously applies Gilmer to the facts here, without necessity or justification overrules the decision in Wertheim and, on the basis of an inapplicable footnote in a Supreme Court decision, abandons the statutory and constitutional mandate to resolve claims of racial discrimination in the courts and in accordance with the equal protection of the laws.
First and foremost, the majority misapplies Gilmer to the facts here. Gilmer is distinguishable from the case at bar. Gilmer is not a racial discrimination case and, in fact, does not mention racial discrimination. The Supreme Court has neither addressed the precise issue before us nor provided any indication that Gilmer would sanction the compulsory arbitration of racial discrimination claims.[2]
Footnote 2, which the majority contends excludes the U-4 agreement from being a part of any employment contract, does no such thing. It should be clear that the Supreme Court's holding in Gilmer was simply that a claim under the ADEA could be subjected to compulsory arbitration pursuant *643 to an arbitration clause in a securities registration application (U-4) form. The holding in Gilmer is given in the first paragraph of the opinion. The Supreme Court stated:
"The question presented in this case is whether a claim under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621 et seq., can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application. The Court of Appeals held that it could, 895 F.2d 195 (CA4 1990), and we affirm" (500 US, at ___, 111 S Ct, at 1650).
The holding does not say that a U-4 Form can never be a part of an employment contract. Moreover, it does not say that any arbitration clause in a U-4 Form can be used to compel arbitration of a racial discrimination claim.
The footnote in Gilmer should be interpreted for what it is, a determination that the U-4 agreement in Gilmer, as opposed to all cases, was not a part of an employment agreement. The Supreme Court did not hold there that such a U-4 agreement could never be a part of an employment contract. This view is confirmed, first, by the Supreme Court's own reference to the fact that while several amici curiae had argued that section 1 "excludes from the coverage of the FAA all `contracts of employment,'" Gilmer had not raised the issue in the lower courts or in his petition for certiorari.[3] It is confirmed, second, *644 by the Supreme Court's statement that "we leave for another day the issue raised by amici curiae." (500 US, at ___, n 2, 111 S Ct, at 1651-1652, n 2.)
Second, the majority ignores Alexander v Gardner-Denver Co. (supra) and overrules Matter of Wertheim & Co. v Halpert (supra) without necessity or justification. In the absence of an unequivocal ruling from the Supreme Court on this issue, this Court should adhere to the principles articulated in Alexander and in Wertheim. In Alexander, the Supreme Court held that an employee's statutory right to a trial de novo under title VII of the Civil Rights Act of 1964 was not precluded by the prior submission of his claim to arbitration in accordance with a collective-bargaining agreement (415 US, at 52). The Supreme Court distinguished contractual rights from statutory rights and found no impediment to utilization of different forums to enforce those distinctly separate rights even though violation of those rights was based upon the same facts (415 US, at 49-51). The Alexander Court considered the purpose of title VII  "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin" (415 US, at 44)  its statutory scheme of providing for consideration of employment discrimination claims in several forums (415 US, at 47), and its legislative history manifesting "a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes" (415 US, at 48). It also stated that, "we think it clear that there can be no prospective waiver of an employee's rights under Title VII" (415 US, at 51). Also, with respect to the arbitrability of a title VII claim, the Alexander Court stated, "Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created *645 by Title VII [because among other things] * * * the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land * * * [and] the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts" (415 US, at 56-57).
In Wertheim this Court declined to require arbitration of plaintiff's claim of sex discrimination against her employer, a member of the New York Stock Exchange. This Court stated:
"[1] Although arbitration is a favored method of dispute resolution, arbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced (Matter of Sprinzen [Nomberg], 46 N.Y.2d 623; see, also, Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N.Y.2d 621). This is especially true in the area of discrimination where particular remedies are afforded by both State and Federal statutes (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 N.Y.2d 176, 183-184)." (48 NY2d, at 683.)
Since Wertheim and even before, the policy of this State has been to resolve such claims of discrimination in the courts.
Third, it needs emphasis that equality of opportunity in employment in New York State is a civil right which is to be enforced by the courts. Article I, § 11 of the State Constitution reads as follows:
"No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."
The Human Rights Law is "deemed an exercise of the police power of the state * * * in fulfillment of the provisions of the constitution of this state concerning civil rights" (Executive Law § 290 [2]). The Human Rights Law makes the opportunity to obtain employment a civil right (Executive Law § 291). That section reads as follows:
"The opportunity to obtain employment without *646 discrimination because of age, race, creed, color, national origin, sex or marital status is hereby recognized as and declared to be a civil right." (§ 291 [1].)
That civil right is protected by the right of an aggrieved person to go into a court of law.
The Human Rights Law expressly grants persons claiming to be aggrieved by an unlawful discriminatory practice, such as discrimination in employment on the basis of race, the right to seek judicial enforcement of State antidiscrimination laws. Thus, Executive Law § 297 (9) reads:
"Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed" (emphasis supplied).
The legislative history of the 1991 amendment of title VII indicates that the congressional intent was to preclude the compulsory arbitration of racial discrimination claims. By addressing alternative dispute resolution methods and clarifying that they were not to preclude other available rights and remedies, Congress specifically articulated what was already implicit in the multiple forum scheme of title VII  that these rights and remedies were coextensive.[4] A passage from the Judiciary Committee Report supporting the amendments makes this clear. It reads:
"This section encourages the use of alternative means of dispute resolution, where appropriate and to the extent authorized by law. These methods include settlement negotiations, conciliation, facilitation, mediation, factfinding, mini-trials and arbitration. *647

"This amendment was adopted to encourage alternative means of dispute resolution that are already authorized by law. A virtually identical amendment was enacted as part of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.
"The Committee emphasizes, however, that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the Committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII. This view is consistent with the Supreme Court's interpretation of Title VII in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). The Committee does not intend for the inclusion of this section be [sic] used to preclude rights and remedies that would otherwise be available."[5]
The majority's decision sanctions the involuntary waiver of the statutory right to judicial review of a claim of racial discrimination. The waiver is involuntary because it is a condition of employment  failure to register precludes one from being a representative and registration requires agreement to arbitrate disputes with the employer. There is no negotiation of this term. Refusal means exclusion from the industry. Thus, this case arguably comes within the statement in Gilmer that "`courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds'" for revoking a contract (500 US, at ___, 111 S Ct, at 1656, quoting Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 627). The involuntariness of this waiver is highlighted by the fact that it is prospective. As noted above, the Alexander Court stated its objection to the prospective waiver of rights under title VII and that objection has yet to be rescinded. Also, the waiver was not knowing because the full panoply of rights now alleged to have been waived were in no way specified in the U-4 Form.
At the core of the instant controversy is racial discrimination *648  a reality that continues to hinder the full realization of the principles upon which this country was founded. The Supreme Court stated in Gilmer, "`[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function'" (500 US, at ___, 111 S Ct, at 1653, quoting Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 637, supra). Although all forms of discrimination are reprehensible, as this statement recognizes, the remedies needed to eradicate one form of unlawful discrimination may be different from those needed to eliminate another form. This Court and any court should hesitate before forcing victims of discrimination into one single remedy, chosen by those who allegedly discriminated against them. The historical reality of racial discrimination as opposed to age discrimination would seem to compel a different treatment. Claims of racial discrimination have been a large part of litigation for over a century. Age discrimination claims have not. In the face of this history and without any evidence of the experience of courts dealing with the issues at the trial level, I cannot agree that these long-standing grievances can be arbitrated away.
Accordingly, the order of the Appellate Division should be reversed.
In Fletcher v Kidder, Peabody & Co.: Order affirmed, with costs.
In Reid v Goldman, Sachs & Co.: Order affirmed, with costs.
NOTES
[1] Under paragraph 5 of the U-4 Form he executed, plaintiff promised "to arbitrate any dispute, claim or controversy that may arise between [himself] and [his] firm * * * that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register." Rule 347 of the Rules of the New York Stock Exchange requires arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative."
[2] To the extent that the dissent's argument is directed toward the wisdom of the United States Supreme Court's recent pronouncements on the subject before us, its arguments are misdirected. In this area, which is governed by preemptive Federal statutes, the Supreme Court's decisions are unquestionably the final word and, as such, are not subject to second-guessing at the State level.
[3] Similarly, the dissenter's extensive reliance on the holding and rationale of Alexander v Gardner-Denver Co. (415 US 36, supra) is misplaced. While that case involved the arbitrability of a dispute arising under title VII, the arbitration agreement in issue was not one governed by the FAA (see, Gilmer v Interstate/Johnson Lane Corp., 500 US, at ___, 111 S Ct, at 1657, supra), with its "`liberal federal policy favoring arbitration'" (Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 625). As the dissent itself acknowledges (dissenting opn, at 641). the Supreme Court made clear in Gilmer that Alexander is not relevant where the congressionally adopted FAA is controlling.
[4] For this reason, the dissent's reliance on article I, § 11 of the State Constitution and the antidiscrimination provisions of the State Human Rights Law (Executive Law § 290 [2]; §§ 291, 297 [9]; see, dissenting opn, at 645-646) is puzzling. No party to this litigation has suggested that the intentions of the New York State Legislature or the framers of the State Constitution should be consulted in resolving this question concerning the proper application of Federal law. Moreover, the State law that the dissent cites does not support the dissent's primary contention that racial discrimination should be treated differently from other forms of discrimination for purposes of determining the proper remedial forum. Executive Law § 297 (9), which provides for a judicial cause of action for unlawful discrimination, does not distinguish between the various forms of discrimination and, in fact, treats racial discrimination the same way as it treats discrimination "because of age, * * * creed, color, national origin, sex [and] marital status" (see, id., § 291).
[5] The dissent's suggestion that the issue is one that the Supreme Court has "`le[ft] for another day'" is simply inaccurate (see, dissenting opn, at 644 and 644, n 3). As it is quoted in the dissenting opinion itself, the Supreme Court's opinion in Gilmer makes clear that the Court chose to "follow * * * the weight of authority, and * * * hold that § 1's exclusionary clause does not apply to" the U-4 Form used in the securities industry (500 US, at ___, n 2, 111 S Ct, at 1651-1652, n 2 [emphasis supplied]). As previously noted, the question "le[ft] for another day" was not whether U-4 Forms are "contracts of employment" within the meaning of the section 1 exclusion from the FAA's coverage, but whether the exclusion applies to all employment contracts rather than being limited to employment contracts in the transportation industry alone.
[1] HR Report No. 102-40 (I), 102d Cong, 1st Sess, at 97 (1991) and HR Report No. 102-40 (II), 102d Cong, 1st Sess, at 41 (1991) and the interpretive memorandum of the cosponsor of the 1991 amendments (Interpretive Mem on Civil Rights Act of 1991, 137 Cong Rec H9530 [daily ed, Nov. 7, 1991] are authoritative statements of the legislative intent. Plaintiff argues further that State constitutional, statutory and decisional law preclude the arbitration of the dispute here.
[2] The Supreme Court's remand of Dean Witter Reynolds, Inc. v Alford (___ US ___, 111 S Ct 2050) "for further consideration in light of Gilmer" does not alter this fact. The Supreme Court specifically did not direct the court to decide the case as Gilmer was decided.
[3] The entire footnote 2 reads as follows: "Section 1 of the FAA provides that nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.' 9 U.S.C. § 1. Several amici curiae in support of Gilmer argue that that section excludes from the coverage of the FAA all `contracts of employment.' Gilmer, however, did not raise the issue in the courts below, it was not addressed there, and it was not among the questions presented in the petition for certiorari. In any event, it would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained in a contract of employment. The FAA requires that the arbitration clause being enforced be in writing. See 9 U.S.C. §§ 2, 3. The record before us does not show, and the parties do not contend, that Gilmer's employment agreement with Interstate contained a written arbitration clause. Rather, the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with Interstate. The lower courts addressing the issue uniformly have concluded that the exclusionary clause in § 1 of the FAA is inapplicable to arbitration clauses contained in such registration applications. See, e.g., Dickstein v. DuPont, 443 F.2d 783 (CA1 1971); Malison v. Prudential-Bache Securities, Inc., 654 F.Supp. 101, 104 (WDNC 1987); Legg, Mason & Co. v. Mackall & Coe, Inc., 351 F.Supp. 1367 (DC 1972); Tonetti v. Shirley, 219 Cal.Rptr. 616, 618, 173 Cal.App.3d 1144 (1985); see also Stokes v. Merrill Lynch, Pierce, Fenner & Smith, 523 F.2d 433, 436 (CA6 1975). We implicitly assumed as much in Perry v. Thomas, 482 U.S. 483 (1987), where we held that the FAA required a former employee of a securities firm to arbitrate his statutory wage claim against his former employer, pursuant to an arbitration clause in his registration application. Unlike the dissent, see post, at 1659-1660, we choose to follow the plain language of the FAA and the weight of authority, and we therefore hold that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement. Consequently, we leave for another day the issue raised by amici curiae." (500 US, at ___, n 2, 111 S Ct, at 1651-1652, n 2.)
[4] Under title VII, employment discrimination claims may be considered in several forums (see, 42 USC § 2000e-5 [b] [EEOC]; 42 USC § 2000e-5 [c] [State and local agencies]; 42 USC § 2000e-5 [f] [Federal courts]).
[5] HR Report No. 102-40 (II), at 41, op. cit.